UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN ROBINSON,

                            Plaintiff,                  Civil Action No. 14-13899

v.                                        Magistrate Judge David R. Grand

ROBERTS HOTELS MANAGEMENT
DETROIT, LLC and MICHAEL ROBERTS,

                            Defendants.

_____/

## DECISION

Plaintiff Steven Robinson ("Robinson") filed this action against his former employer, Roberts Hotels Management Detroit, LLC ("RHMD"),[1] alleging violations of the overtime pay provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.* On November 2, 2015, the Court conducted a bench trial in this matter.

Unfortunately, the parties litigated this action without much zeal: they each failed to file pre-trial motions on important issues; RHMD took legal positions throughout the case which seemed, at best, an extreme stretch, only to abandon them at trial; the parties made bare-bones evidentiary presentations at trial, calling a total of three witnesses between them;[2] and Robinson failed to timely and properly synthesize and summarize his main documentary evidence (though he relies principally on his own testimony), which he now, post-trial, attempts to use as the

---

[1] Also named as a defendant in this action is Michael V. Roberts, Jr. In his trial brief, however, Robinson indicated that he is no longer seeking recovery from Mr. Roberts. [20 at 4, n.1]. Consequently, the Court will limit its analysis to Robinson's claims against RHMD.

[2] Robinson testified on his own behalf, along with his wife, Delores Robinson ("Mrs. Robinson"), and RHMD's only witness was its Human Resources Manager and Assistant Controller, Donovan Martin ("Martin").

backbone for his damages calculation,[3] albeit through a series of purported "just and reasonable inference[s]," "estimate[s]," "assum[ptions]," and "extrapolat[ions]."  [24 at 3-6].

Pursuant to Fed. R. Civ. P. 52(a), and based on the evidence presented at trial[4], an assessment of the witnesses' credibility, weighing the testimony and exhibits, and drawing such inferences as appropriate, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### Background

1.      RHMD is a Missouri limited liability company registered to conduct business in Michigan.  It generated annual sales in excess of $500,000 in 2012, 2013, and 2014.  During this period of time, RHMD's employees engaged in credit card transactions, reservations over the telephone and internet, and similar interstate communications.

2.      Robinson was employed by RHMD to work at the Roberts Riverwalk Hotel (the "Hotel") from September 24, 2012 until July 10, 2014.   Robinson was employed as a maintenance worker, and his daily job responsibilities generally included performing minor and major repairs to the Hotel's heating and cooling systems, maintaining the Hotel's common spaces, outbuildings, grounds, and parking lots, and performing various handyman-type tasks.

3.      RHMD compensated Robinson on a salary basis.  From September 24, 2012 until June 30, 2013, Robinson's salary was $28,000 per year.  From July 1, 2013 until his termination on July 10, 2014, Robinson's annual salary was $30,000.  At no time did RHMD compensate

---

[3] Perhaps this explains why Robinson submitted Proposed Findings of Fact on October 30, 2015, claiming unpaid overtime of $23,267.23 [21 at ¶13], yet now claims to have established unpaid overtime of $35,561.16 at the November 2, 2015 trial.  [24 at 9].

[4] As discussed on the record, the Court will receive the document filed as Exhibit 1 to Robinson's Post-Trial Brief for the limited purpose of it being a summary of the information contained in his "work log."  *See infra* at ¶¶ 5, 12; *see also* Fed. R. Evid. 1006.  The Court notes that RHMD does not object to the summary's accuracy, but only to the manner in which Robinson attempts to use it extrapolate his alleged unpaid overtime.

Robinson at the rate of 1½ times his regular rate of pay for any hours worked in excess of forty per week.

4.    Because Robinson was considered a "salaried" employee, RHMD did not maintain any records regarding the number of hours Robinson worked.  Robinson was not required to punch a time clock or otherwise record his start or end times for work.  Consequently, RHMD offered no evidence of the precise number of hours Robinson worked during each week of his employment.

**Robinson's Testimony Regarding His Hours Worked and Documentary Evidence**

5.    To attempt to prove the hours he worked, Robinson relied principally on his own testimony, as well as, to a lesser extent, that of Mrs. Robinson.  Robinson also admitted into evidence a log book of the work he performed for RHMD each day (the "work log").  *See infra*, ¶12.

6.    During his employment with RHMD, Robinson worked both the day shift (which started at 8:00 a.m.) and the afternoon shift (which started at 3:00 p.m.), occasionally alternating between the two shifts in the same work week.

7.    Robinson testified that he regularly worked Wednesday through Sunday, with Mondays and Tuesdays off.[5]  He most often worked the day shift.  Robinson testified that, on those days, he typically arrived at the Hotel at 7:45 a.m.[6] and began work by policing the grounds and the outsides of the buildings.  He then checked out a two-way radio from the

---

[5] This testimony is completely belied by Robinson's work log which indicates that he only worked a handful of Sundays during his entire employment with RHMD.

[6] Robinson seeks compensation based on an assumption that he typically began work at 7:45 a.m. when he worked the day shift.  [24 at 5-6].  But this assumption (and Robinson's testimony) is inconsistent with his work log which shows that for day shifts he started work prior to 8:00 a.m. on only a handful of days, but started at 8:30 a.m. or later many dozens of days.

reception desk, logging the "time out" on a radio log book (the "radio log").[7]  Robinson further

testified that, on Wednesdays, Thursdays, and Fridays, he regularly worked until 4:00 p.m., at

which time he left work to pick up his wife from her nearby job (because they had only one

vehicle).  According to Robinson, after he picked up his wife, she either dropped him off back at

the Hotel, or he drove her home and then returned to work.  Robinson testified that he would

generally be back at the Hotel by 5:00 p.m. and would continue working, on average, until 7:00

p.m.  Robinson testified that sometimes he stayed later than this, and on rare occasion he would

not stay as long.

8.      On Saturdays and Sundays, Robinson did not have to leave work during his shift

to pick up his wife from work because she did not work weekends.  On those days, Robinson

testified that he regularly worked from 7:45 a.m. to 6:00 or 7:00 p.m.

9.      Robinson sometimes worked the afternoon shift, beginning at 3:00 p.m.  On those

days, he left work at 11:00 or 11:30 p.m.  Robinson acknowledged at trial that, on days he

worked the afternoon shift, he did not work overtime.  Indeed, both Robinson and his wife

testified that, on these days, he still left work to pick her up from her job and drive her home;

thus, it is certainly possible that on days he worked the afternoon shift, he actually worked fewer

than eight hours.

10.      Robinson testified that RHMD management and "kitchen" staff frequently

("basically every other day") asked him to work "off shift," *i.e.*, either stay past the end of his

---

[7] Robinson testified that this radio log was kept at the Hotel's reception desk and that the person working the desk would also sign the radio log when the radio was checked out (and back in). He testified that the radio log would show the times each day when he checked the radio out and back in.  Martin admitted that RHMD did keep such a radio log, but testified that, when searching for documents responsive to Robinson's discovery requests, he was unable to locate any radio logs.  No radio log was produced during discovery or offered into evidence at trial. Despite the radio logs' obvious relevance, Robinson never filed a motion for spoliation sanctions related to RHMD's alleged inability to locate them.

shift, arrive at work before his scheduled shift, and/or come in after he had left his shift or on his days off because of a problem that had arisen at the Hotel.[8]

11.     When asked, Robinson was unable to identify any specific workweek during which he worked more than forty hours.

12.     While Robinson was employed at RHMD, he maintained a personal log book – the work log – in which he described in detail his daily employment-related activities. (Plaintiff's Trial Exhibits 1 and 2).  Robinson testified that one reason he did so was to "cover[] [his] behind."  For approximately the first nine months of his employment, Robinson noted in his work log the time he allegedly arrived at work, expressed in military time.  Nowhere in his work log did Robinson record the time he left work, however.[9]

13.     Robinson admitted at trial that he never made any notation in his work log

---

[8] There are multiple problems with this testimony, which greatly undermine Robinson's credibility.  First, Robinson stipulated at trial that his work log made no specific mention of a manager asking him to stay late or come in to work off shift, a detail one would expect to see in a such a log.  Second, as noted above, *supra* fn. 6, Robinson's work log rarely showed him coming in to work the day shift earlier than 8:00 a.m.  Third, given Robinson's testimony that he would typically leave work for the day at 7:00 p.m. (for the day shift) or 11:00 or 11:30 p.m. (for the afternoon shift), any "call backs" – which Robinson said would require him to work an additional 2.5-3.0 hours – would have meant that he either: (1) would have been at home for only a very brief period of time before getting "called back" and working until almost midnight; or (2) he would be called back late at night (or very late at night), working until the wee hours of the morning.  Had Robinson actually worked hours like these with any degree of regularity, one would have expected him to discuss those circumstances in great detail, which he did not do.  This latter aspect of Robinson's testimony makes even less sense considering that he also testified that his afternoon shift days were shorter because there "wasn't too much going on at nighttime."  Fourth, Robinson's work log showed him performing work more than five days in any week only a handful of times.  Finally, in at least one instance (on November 3, 2012), Robinson indicated in his work log that he "Reported for duty @ 0918 due to comp from staying over," which the Court interprets to mean that Robinson adjusted back his start time to account for extra time he had worked previously.

[9] It is noteworthy that Robinson failed to record in his work log the time he left work despite testifying that one purpose of the log was to "cover[] [his] behind," that management "was always complaining about a lot of people [who were] taking off early and coming in late…," and that he was a "pretty meticulous and detail oriented person."

indicating that anyone from RHMD's management or ownership asked him to work overtime. Robinson also admitted that his work log contains no entries indicating that he told someone in RHMD's management or ownership that he was working overtime on any particular day.

14.     Robinson admitted at trial that he made no record – in his work log or elsewhere – of ever working overtime for the Hotel.  Indeed, he was unable to identify through his work log a single day, week, or month that he was asked to work overtime or actually worked overtime. This is true despite the detailed nature of Robinson's work log, and his testimony that he was a "pretty meticulous and detail oriented person."  Thus, there is no dispute that, if Robinson worked more than forty hours in a workweek, he never recorded or reported to RHMD the dates, times, or instances that he did so.

15.     Before filing the instant lawsuit, Robinson never made a claim or complaint in any manner to RHMD alleging that he had worked unpaid overtime, that he had been asked to work unpaid overtime, or that he had been suffered to work unpaid overtime.

16.     For all of the reasons discussed above, Robinson's testimony that he worked an average of fifty-two hours per week – or any overtime, for that matter – is simply not credible. Robinson's work log was inconsistent with his testimony in numerous material respects. Robinson was unable to identify any specific week in which he worked overtime.  Despite maintaining detailed notes documenting his start time and the work he performed at the Hotel (at least during the first nine months of his employment), in part to "cover[] [his] behind," nowhere in his work log did Robinson ever state the time he left the Hotel nor mention being asked to stay late or come back to work after completing his shift, being asked to work overtime, working overtime, or informing RHMD that he had worked overtime.

### Mrs. Robinson's Testimony

1.      Like her husband, Mrs. Robinson was unable to point to a single pay period in which her husband allegedly worked overtime.  Mrs. Robinson's testimony that it "seemed like it was all the time" that Robinson was called in to work at the Hotel on his days off is not credible in light of the many days he did not work at all.  *See supra* fn. 8.  Similarly, for the reasons discussed above, *id.*, her testimony that he "was called in after he had finished his workday" "all the time" is not credible.  The Court also notes that on the days Robinson picked his wife up from work and dropped her back off at home she would have no personal knowledge of whether he actually returned to the Hotel or how long he remained there.

### Martin's Testimony

1.      Martin testified that he and Robinson would "always speak," but Robinson never reported to him that he was working overtime (or being asked to work overtime).  Indeed, Martin testified that, on at least one or two occasions, Robinson gave him a ride home from work when his (Martin's) shift ended at 5:00 p.m.  Robinson did not dispute this testimony, which the Court finds credible.

### CONCLUSIONS OF LAW

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, as Robinson's claim is brought under the civil enforcement provision of the FLSA, 29 U.S.C. §216(b).

2.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

3.      RHMD was Robinson's employer within the meaning of the FLSA.  *See* 29 U.S.C. §203(d).

4.      At trial, the parties stipulated that Robinson is not exempt from the FLSA's

overtime requirements.  The FLSA requires employers to pay their non-exempt employees "at a rate not less than one and one-half times the regular rate" for work exceeding forty hours per week.  29 U.S.C. 207(a)(1).  Employers who fail to do so may be liable to their affected employees "in the amount of their … unpaid overtime compensation" and "in an additional equal amount as liquidated damages."  29 U.S.C. §216(b).

5. To prevail in an FLSA overtime suit, a plaintiff must prove, by a preponderance of the evidence, that he "performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*, 29 U.S.C. §254(a); *see also White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012).

6. Compensable work under the FLSA includes work that is "suffered or permitted." Suffered or permitted work means any work performed by an employee for the benefit of an employer, whether requested or not, provided the employee's supervisor knows or has reason to believe that the work is being performed and has an opportunity to prevent the work from being performed.  *See* 5 C.F.R. §551.104.

7. For employers subject to the overtime requirements of the FLSA, it is the employer's responsibility to create and maintain records of employee hours worked.  *See* 29 U.S.C. §211(c).  If an employer has failed to keep records, however, employees are not denied recovery under the FLSA simply because they cannot prove the exact amount of their uncompensated work.  *See Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014). Rather, the Supreme Court has stated:

> [W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes … we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient

8

> evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson*, 328 U.S. at 687-88.

8.     Because RHMD classified Robinson as exempt from the overtime requirements of the FLSA (albeit improperly), it did not keep precise records regarding his hours worked. Because RHMD did not keep records, Robinson "need not put forth 'the precise extent of uncompensated work.'"  *Holaway*, 771 F.3d at 1059 (quoting *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013)).  Rather, as noted above, Robinson need only produce "sufficient evidence" to show the hours he worked "as a matter of just and reasonable inference." *Id.*  Moreover, courts have held that, "FLSA plaintiffs are not limited to proving the number of hours worked through contemporaneous written time records." *Bean v. Doug & Matthew Home Remodeling, LLC*, 2015 WL 1728383, at *2 (E.D. Mich. Apr. 15, 2015). Rather, "it is possible for [a] plaintiff to meet this burden by relying on his recollection alone." *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005) (citing cases); *see also Bueno v. Mattner*, 829 F.2d 1380, 1387 (6th Cir. 1987) (FLSA plaintiff's testimony can be sufficient to satisfy his burden of proof regarding the number of hours worked); *Moran v. Al Basit, LLC (Moran II)*, 2015 WL 3448655, at *4 (6th Cir. June 1, 2015) (FLSA plaintiff's testimony alone can be sufficient to defeat defendant's motion for summary judgment).

9.     In this case, Robinson offered only his own testimony, as well as that of his wife, along with his work log in an attempt to prove that he worked in excess of forty hours per week during every week of his employment with RHMD.  While an employee's own testimony alone could be sufficient to satisfy his burden of proof in a case like this one, as set forth above,

Robinson's and his wife's testimony regarding his hours worked were not credible, and are inconsistent with his work log.

10.    The Court also notes that despite testifying that several of his co-workers would have regularly seen him working overtime, Robinson failed to call any additional witnesses other than his wife.  And, although Robinson testified at trial that RHMD's "radio logs" would contain records of his approximate start and end times each day, as noted above, he never filed a motion to compel their production or for spoliation sanctions, if he believed they were improperly destroyed.

11.    For all of the above reasons, the Court concludes that Robinson has not come forward with sufficient credible evidence to establish that he performed work for which he was improperly compensated in any workweek while employed by RHMD, and that he failed to produce sufficient evidence to show the amount and extent of any such work as a matter of just and reasonable inference.

12.    Because Robinson has not met his burden of proof, he has failed to prove by a preponderance of the evidence that RHMD violated the FLSA.  Accordingly, RHMD is entitled to a verdict in its favor.

Accordingly, this case is DISMISSED.

SO ORDERED.


Dated: January 5, 2016                                    s/  David R. Grand
                                                         DAVID R. GRAND
                                                         UNITED STATES MAGISTRATE JUDGE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 5, 2016.

<u>s/Eddrey O. Butts</u>
EDDREY O. BUTTS
Case Manager

11